Cornwall v. Ganser.

JOHN CORNWALL, Appellant, v. JOSEPH GANSER et al., Respondents.

St. Louis Court of Appeals, November 20, 1900.

1. Building and Loan Associations: BY-LAWS: STATUTORY CONSTRUCTION. A by-law of a Building and Loan Association enlarges the provisions of section 2817, Revised Statutes 1889, and requires something to be done which is not found in the statute, which recites that "When every share shall have been furnished with a loan of two hundred dollars, less the average premium or the net cash on hand shall be sufficient to pay each free share of stock two hundred dollars, less the average·premium, the persons holding such free share, shall at once surrender same and cease to be members of the association. The borrowers who paid for their loans more than the average premium shall make no further payment but shall receive back the excess of premium paid above the average. The borrowers who paid for their loans less than the average premium, shall pay the difference into the association; thus if the average premium be found to have been twenty per cent, the borrower who paid thirty per cent will receive back ten per cent, and one who paid only fifteen per cent must pay to the association five per cent additional to equalize the average premium of twenty per cent. Any balance remaining in the treasury shall be paid to the stockholders in proportion to the number of shares held by each."

2. ——: PREMIUM BIDDER: COMPETITIVE BIDDING: BOARD OF DIRECTORS: STATUTORY CONSTRUCTION. Section 2812, Revised Statutes 1889, provides that loans made by Building and Loan Associations shall be made to the highest premium bidder on competitive bidding in open meetings of the board of directors, and, in the case at bar, the by-law of the association is irreconcilable with the statute, and must be set aside.

Cornwall v. Ganser.

3. Estoppel. Where a person by word or conduct voluntarily induces another to act in view of a certain state of facts, he will be estopped to allege against him a different state of facts.

4. ———: ———: FACTS. And applying the rule of equitable estoppel to the facts in the case at bar it is clear that the appellant's bill is without merit.

Appeal from the St. Louis City Circuit Court.—*Hon. Horatio D. Wood*, Judge.

AFFIRMED.

*W. E Fisse* and *Henry Kortjohn* for appellant.

Section 59 of the by-laws of the defendant association, whose purpose is to secure equality among borrowing shareholders in respect of the premium paid by them, is invalid: It is in conflict with the provisions of section 2817 of the statute. The association had no right nor power to adopt a by-law inconsistent with this statute. The by-law is also obnoxious to section 2812, Revised Statutes 1889.

*Henry S. Shaw* for respondents.

On the question of the legality of the by-law No. 59, I desire to say that it is not necessary that its adoption be evidenced by the same formalities as would be necessary in a judgment of a court or an act of the legislature. There need be no evidence of its adoption if it was known and acquiesced in by the members of the society. 2 Am. and Eng. Ency. of Law, p. 709. There is nothing illegal in this section of the by-laws, nor is it inconsistent with or repugnant to section 2817 of the statute. That provides how the free shares shall be paid, but does not prohibit a fair and equitable

equalization of the shares of the borrowers.   Conceding that
the by-law must have been adopted by the corporation ag-
gregate, instead of by the directors, from what has been said
heretofore, long acquaintance by plaintiff, the adoption and
working under the by-law by everybody, cures any infor-
mality in its adoption.   Hunleth contracted with this by-law
in view and made it part of his contract; he is now estopped
from disputing its validity and plaintiff stands on all fours
with him.   This applies equally to all the by-laws.   It is too
late for plaintiff to dispute their regularity or validity.
Besides the court must presume the regularity of the adop-
tion of the original constitution by the shareholders, who
had a right to prescribe a method of amending them.   If
section 59 is not valid, section 55 is, and under that plain-
tiff's shares were worth $185.73.   He received $200 per
share, and to equalize him with the others he owes $14.27
multiplied by 40, which equals $570.90.   Cornwall either
actually knew of the existence of this by-law or by the exercise
of the most ordinary and lowest degree of diligence might
have known it, and having acted on it and permitted others
to act on it to their injury, for more than eight years, if he
escapes paying his honest debt, he is estopped now from
questioning the existence of the by-law or the regularity of
its adoption.   State ex rel. v. Grand Lodge, etc., 70 Mo.
App. 466.

BLAND, P. J.—The respondent association on Febru-
ary 3, 1890, offered a loan of $8,000 to the highest bidder.
Frank J. Hunleth bid a premium of ten per cent or $800 for
the loan, and it was awarded to him.   He held forty shares
of the par value of $200 per share of the certificates of stock
(series "A") in the association.   As evidence of the loan
and its terms he executed a bond to the association for $8,800,

agreeing to pay monthly as interest on the $8,000, $48, and to pay monthly $8 on the premium, and $40 per month as monthly dues on his stock certificates, and to continue these payments until the association should be wound up according to its constitution and by-laws. To secure the bond he pledged his forty certificates of stock and executed a deed of trust on real estate in the city of St. Louis, in which deed respondent Joseph Ganser is named as trustee. Some time after the transaction, Hunleth sold the real estate described in the deed of trust to appellant and transferred to him his forty shares of stock. Appellant assumed the payment of the loan and took the place of Hunleth in the association and assumed his liabilities and obligations thereto. In December, 1896, the association liquidated its first series of stock, of which there were 413 free shares and 562 pledged or borrowing shares of stock. The profits at this time, as shown by the books of the association were $50.31 per share, and the cash value per share, excluding arrearage premiums, was $116.31. The free shareholders received $116.31 each and surrendered their certificates. The association ascertained that the average premium paid by the borrowers was $33.69 per share. Prior to making the loan to Hunleth the association adopted the following by-laws:

"Sec. 59. When every share shall have been furnished with a loan of two hundred dollars, *less the average premium* or the net cash on hand shall be sufficient to pay each free share of stock two hundred dollars, less the average premium, the persons holding such free shares, shall at once surrender same and cease to be members of the association. The borrowers who paid for their loans more that the average premium shall make no further payment, but shall receive back the excess of premium paid above the average. The borrowers who paid for their loans less than the average

premium, shall pay the difference into the association; thus if the average premium be found to have been twenty per cent, the borrower who paid thirty per cent will receive back ten per cent, and one who paid only fifteen per cent, must pay to the association five per cent additional to equalize the arrearage premium of twenty per cent. Any balance remaining in the treasury shall be paid to the stockholders in proportion to the number of shares held by each. Section 55, with amendment, is hereby repealed, if section 59 be adopted."

To carry out the provisions of this by-law, it was found that to equalize the premium on the Hunleth loan with premiums paid by the other borrowers it was necessary for the appellant to pay to the association $547.60, and he was so notified, and the weight of the testimony is that he agreed to make the payment and offered to give a thirty-day note to the association for the amount. This was not accepted, but a short time was given appellant in which to make the payment. All of the other borrowers assented to the equalization scheme provided for in the by-law, and all in arrears, except appellant, paid the amounts found necessary to effectuate the premium equalization scheme. When this was agreed to the association paid the free shareholders and settled with the borrowers, except appellant, and satisfied their deeds of trust. But to do this, according to the plan agreed upon, it became necessary to have in hand the $547.60 the association claimed appellant owed it, and in default of its payment by appellant it borrowed that amount. Appellant refused to pay the $547.60 and brought this suit to compel satisfaction of the deed of trust, on the ground that it has been fully paid. The trial judge found that appellant was estopped to deny the debt of $547.60 and dismissed the bill.

1.   It is contended by appellant that by-law No. 59,

*supra*, is in conflict with section 2817, Revised Statutes 1889, in force at the date of the transaction. This statute reads as follows:

"Whenever all the shares of any series of such corporation then actually in force shall have been redeemed by loans or advances thereon, or whenever the funds and property of the association shall be sufficient to pay the debts of such corporation and upon the unredeemed shares of such series, the value thereof, as fixed by the by-laws of such corporation, then the debts of such corporation shall first be paid, and the deeds of trust of borrowers shall be released and the free or unborrowed shares shall be paid off. The free or unborrowed shares shall in no case receive any more than the face value of their shares, less the average premium paid by the borrowers of the association up to date."

The by-law enlarges the statute and requires something to be done that is not found in the statute, that is, that there shall be an equalization of premiums on loans before the association can be wound up or satisfaction made of the deeds of trust taken to secure loans. Section 2812, Revised Statutes 1889, provides that loans made by these associations shall be made to the highest premium bidder on competitive bidding in open meetings of the board of directors. Now, if on the wind up of these associations these competitive bidders are brought together on an exact level in this regard and their premiums equalized, regardless of their bid; in other words, if in the end each one is required to pay the same per cent per share as premium on his loan, it seems to me that the element of competition would be eliminated from the loan transactions and the requirement of the statute for competitive bidding would be nullified. The by-law is irreconcilable with the statute, and must be set aside. But say respondents, be this so, the parties acted on the by-law and made it a part of the original contract, and for this reason

are bound by it. This position might have some force if said of a by-law that was legal and proper, but unavailing as a by-law, because ineffectually adopted by the corporation, but it has never been held that by their course of dealing or by express contract parties may set the law at naught.

2.   When a person by word or conduct voluntarily induces another to act in view of a certain state of facts, he will be estopped to allege against him a different state of facts. Reynolds v. Kroff, 144 Mo. 433; State ex rel. v. Branch, 151 Mo. 622. Applying this rule of equitable estoppel to the facts in this case it is quite clear that the appellant's bill is without merit. With full knowledge of the by-law and of the proposition to wind up the association in compliance with its terms, he gave his assent thereto and promised to pay a sum of money necessary to make an equalization of premiums. Relying on this promise the association borrowed the $547.60 to complete the liquidation, expecting to be reimbursed by the appellant. Not until the liquidation was completed and the $547.60 of borrowed money was paid out to comsumaate the scheme of settlement assented to by appellant, did he raise an objection or call in question the validity of the by-law or object to the plan of settlement. The association on account of his promise to pay incurred a liability that it would not have incurred had not he agreed to pay the $547.60. After this money was borrowed and paid out on the faith of his promise to pay, he is in the circumstances estopped to come into a court of equity and ask to be relieved of the burden which he voluntarily assumed, and by so doing, induced the association to assume for him, by borrowing the money and winding up the association according to a plan to which all the stockholders, including himself, gave their assent.

The judgment is affirmed.   All concur.