ROBINSON, J.
This is an action at the relation ¡and to the use of Eichard Ilospes, trustee of Alice Crookes, and the said Alice Crookes against Joseph Branch, her former curator, and the personal representatives of the sureties on his bond.
The cause comes up from the St. Louis Circuit Court, and makes its appearance in this court for the fourth time, the former appeals being reported respectively in the 112 Mo. 661; 126 Mo. 448; and the 134 Mo. 592.
Suit was originally commenced on March 12, 1889. Defendant Branch suffered a default to be taken against himself; defendant Elizabeth M. Parkes, executrix of Robert M. Parkes, deceased, although filing a general denial, took no part in the trial. The issues were made up by the petition of the plaintiffs and the second separate amended answer of E. O. Titman, administrator of the estate of Basil W. Alexander, deceased.
*632 Upon the last trial a jury, being called, returned a verdict assessing plaintiffs damages >at the sum of $30,000-, whereupon the court entered a judgment in accordance therewith. Defendant Titman, administrator, filed a motion for a new trial, and the same being overruled, in due time perfected his appeal.
The petition alleged the appointment and qualification in April, 1818, of Joseph W. Branch, as curator of the estate of Alice Crookes, who was then a minor; the execution of a bond for the faithful discharge of his duties, in the sum of $32,000, with Parkes and Alexander as sureties; the subsequent death of Parkes and Alexander; and the appointment and qualification of the present defendants as their personal representatives respectively. The petition then charges a breach of the conditions of the bond sued on, in that Branch received and collected the sum of $29,514.32, the property of his ward, which sum he converted to his own use to the extent of $20,511.95, for which plaintiffs pray judgment, together with interest and costs.
The second amended answer of E. C. Titman, administrator, upon which the case was tried, admits the death of the sureties on the curator’s bond; the appointment and qualification of the personal representatives; and the appointment of Joseph W. Branch as curator of the estate of Alice Crookes, but denies the other allegations of the petition, and. as an affirmative defense avers that Alice Crookes is the daughter of one Joseph Crookes, who died testate in St. Louis in November, 1814; and that she is a legatee under his will, by the terms of which he directed that Joseph W. Branch should be appointed curator of her estate during her minority, and further provided, upon her reaching the age of eighteen years, that her estate should be placed in the hands of a trustee for her sole and separate use and benefit. The answer sets up the final settlement of Joseph W. Branch as curator of the estate of Alice Crookes upon the attainment of her majority, the *633 approval of suela settlement by tbe probate court, bis discharge as curator, and tbe order finding tbe balance in bis bands to be tbe sum of $19,832.15, and directing tbat it be paid to tbe trustee of Alice Crookes, when one should be appointed as provided for by tbe will of her father. Tbe answer contains a further averment tbat subsequent to sucb ¡action of tbe probate court, Alice Crookes filed a petition in tbe circuit court of St. Louis setting up tbe foregoing facts, and praying for the appointment of Joseph W. Branch as her trustee; upon which tbe circuit court found tbe facts to be as contained in tbe petition, and appointed Branch trustee, who accepted tbe trust ¡and gave bond in tbe sum of $40,000, with Charles P. Chouteau and R. M. Parkes as sureties, which bond tbe court approved.
In addition tbe answer sets out the filing of a receipt in tbe probate court signed by Branch as trustee to himself as curator for tbe sum found to be in bis bands; and states tbat at tbe time of bis discharge as curator Branch was solvent, and bad sufficient property to satisfy tbe sum of $19,832.15; tbat afterwards suit was brought by Alice Crookes in tbe circuit court against Branch, charging him with tbe misappropriation of her funds held in tbe capacity of trustee, asking for bis discharge, and an accounting of tbe sum due; which proceeding resulted in ¡an account being taken, and in tbe removal of Branch as trustee.
Tbe answer also charges tbat a new trustee was appointed who subsequently, upon tbe failure of Branch to pay over tbe amount as ascertained to be due from him, brought suit against him as trustee, ¡and the sureties on bis bond as sucb, which suit is still pending. “And tbe defendant says tbat tbe several allegations and admissions aforesaid are solemn declarations made by tbe said Alice Crookes, and by tbe plaintiff herein, to tbe effect tbat tbe fund in question came to tbe bands of said Branch as trustee, after be was appointed and qualified as sucb, and are inconsistent with tbe averments now *634 made by the plaintiffs in this cause, that said fund was never received by said Branch as trustee, but was converted by him to his own use whilst in his hands as curator; that said Alice Crookes, having in her aforesaid pleadings admitted and averred that said Branch had said fund in his hands as curator at the time he was appointed trustee, and that after he was appointed and gave bond as trustee he paid the same over to himself as trustee, and thereafter had it in his possession and custody as trustee, and having induced this court to so find and declare by its record, this defendant’s intestate, said D. W. Alexander, was justified in relying upon the facts so stated and declared, and he relied upon the same in consequence thereof, and foregoing all steps or actions which he otherwise would or could have taken during the time of Branch’s solvency to compel payment of said fund, or to obtain security for its payment, and this defendant is advised that with such allegation and admission on the part of said Crookes appearing of record, and the court’s finding and judgment thereon, said Alexander could not at any time during his lifetime, nor this defendant after his death, have maintained any action or proceeding to compel said Branch to pay or secure said sum, though until the day of his failure in 188S said Branch was amply able to pay or secure said sum; and that by reason of all of which the plaintiffs are estopped to assert a conversion of such funds by Bi'anch as curator; and further claiming, that by reason of the commencement of this suit against Branch as trustee, and the sureties on his boiid in that capacity, plaintiffs elected to hold him as trustee, and not as curator.” Which new matter plaintiff generally denied by reply.
The evidence shows that in 1874, Alice Crookes, then a minor, became a legatee under the will of Joseph Crookes, her father; In his will Joseph W. Branch, who was the maternal uncle of Alice, was appointed her curator. He duly qualified as such, and executed the bond, which is the basis of this *635 suit, in the sum of $32,000, with Basil "W. Alexander and Robert M. Partes as securities. Joseph Orookes and Branch had been engaged in business together, although just prior to his death Orookes had sold out his interest to Branch, but had never withdrawn any money and at the time of his death the legacy of Alice Avas in the hands of Joseph Branch. The will of Orookes further provided that when Alice should become eighteen years of age her estate should be turned OArer by the curator to a trustee who should hold the same for her sole and separate use and benefit. This ward attained her majority February 21, 1882, and on July 9, 1884, Branch made final settlement of his curatorship in the probate court, in which he was found chargeable with the sum of $20,511.95, and after deducting certain costs and expenses there was left a balance of $19,832.15, and this sum the probate court ordered to be paid to her trustee. At the time this settlement was made Alice Crookes Avas temporarily sojourning in North Wales, and Avas represented in the probate court by her attorney in fact, Richard Hospes, who had special authority so to do, in order to ascertain the correct balance due her from her curator, Branch.
As no trustee had been named in the will, in January, 1885, Alice Crookes, by her attorney, made an application to the circuit court setting up the facts, and praying the court that Branch might be appointed her trustee. The court found the facts in accordance with the petition and made an order appointing Branch trustee, Avho accepted the appointment and gave bond for the faithful discharge of his trust in the sum of $40,000, Avith Charles P. Chouteau and R. M. Parkes as sureties, Avhich bond the court approved. On June 16, 1885, Branch submitted to the probate court a copy of his appointment as trustee, together with a receipt signed by himself as trustee acknoAvledging payment of the sum of $19,832.15 from himself as curator. Whereupon the court made the folloAving order: “Noav comes Alice Crookes, late a *636 minor, by Joseph W. Branch, her trustee, and acknowledges in open court full and entire payment and satisfaction of the balance ordered to be paid and delivered to her upon the final settlement of said Joseph W. Branch, curator of her estate, heretofore made herein. It is therefore ordered by the court that said Joseph "W". Branch be and he is hereby discharged as such curator. Receipt filed.” In March, 1888, Alice Crookes filed a suit in the circuit court of St. Louis against Joseph ~W. Branch, alleging his appointment as trustee and the receipt as such by him of the sum of -$19,832.15; the misappropriation of such funds; and prayed for his removal, and an ascertainment of the amount of said trust fund. An account was taken, resulting on the finding of an amount due in the sum of $20,689.69. The court then appointed Richard ITospes, the present plaintiff, trustee, approved the bond tendered by him, and ordered that the sum so found to be due from Branch be paid over to him. This payment Branch failed to malee, and in August, 1888, Hospes, as his successor, brought suit against Branch and the sureties on his bond as trustee, charging misappropriation of the funds by Branch/ whjle acting in the latter capacity, which suit is still pending.
It appears that after the commencement of this action an agreement was entered into between the plaintiffs herein and the sureties on Branch’s bond as trustee, that plaintiffs should prosecute this suit to a final judgment, and in the event they should be unsuccessful, such sureties agreed to pay the amount of such misappropriation.
The record further shows that after the appointment of Branch as trustee and before his removal, he paid to Alice Crookes various sums aggregating upwards of $4,000, which she receipted for as payments from him as her trustee.
At the close of the testimony the court of its own motion gave instruction No. 1, and at the instance and request of defendant gave instruction No. 2, both of which instructions were read together, and are as follows:
*637 No. 1. “The jury are instructed that they will return a verdict in this case against defendant Branch in favor of the plaintiff. And they will also return a verdict in favor of plaintiff against the other two defendants, unless they find in favor of said two defendants under the following instruction numbered two.”
No. 2. “The jury is instructed that the probate court record read in evidence by the plaintiff shows that Alice Crookes had notice of the presentation of the final settlement of her curator, Joseph W. Branch, and appeared thereto by her attorney in fact, who was represented by counsel. Pile No. 66,254 of the circuit court, city of St. Louis, given in evidence by defendants, shows that Alice Crookes filed her petition in said cause on the 17th day of January, 1885, and in her said petition stated: ‘That the said Joseph W. Branch as such curator, has in his possession the sum of nineteen thousand, eight hundred and thirty-two and 15-100 dollars derived from the estate of Joseph Crookes, deceased, and subject to the order of any trustee that may be appointed; that your petitioner has attained her majority; that said Joseph W. Branch, as such curator has made his final settlement 'and is ready and willing to pay over said sum in the manner pointed out in said will.’ And in and by her said petition she prays the court to appoint Joseph "W". Branch as trustee for her to receive said sum. The decree in said cause No. 66,254, given in evidence by defendants, shows that the court, on the 1st day of June, 1885, heard evidence upon said petition of Alice Crookes, and ascertained therefrom that the facts set forth in said petition are trae, and thereupon,.on said day, appointed Joseph W. Branch trustee, who, in open court, accepted the trust, and gave bond for the faithful discharge of said trust.
“The jury is further instructed that file No. 75,841 of the circuit court, city of St. Louis, given in evidence by defendant, shows that on the 7th day of March, 1888, Alice Crookes instituted suit against Joseph W. *638 Branch in said circuit court, and in her petition, among other things, stated that: ‘Upon her application to the honorable court, in cause No. 66,254, assigned to room No. 1, this honorable court, on June 1, 1885, appointed the defendant, Joseph W. Branch, her trustee, and he thereupon received the sum of $19,832.15, from the said curator as trustee for this plaintiff.’ And in said petition, she furthermore stated: ‘That since the payment of said money as aforesaid, the defendant has failed and refused to faithfully discharge his duty as such trustee in this, that he has misapplied the said trust funds by appropriating them to his own use.’
“The decree in said cause, rendered July 20, 1888, and given in. evidence by defendants shows that upon the hearing of the cause, to which hearing the plaintiff Alice Crookes, appeared by her counsel, the court found upon the pleadings and evidence: ‘That the defendant was duly appointed trustee of the plaintiff’s estate in cause No. 66,254 of this court, on June 1, 1885, and as such trustee received into his possession the sum of $19,832.15 of the estate belonging to1 the plaintiff; that said defendant has failed and refused to faithfully discharge his said duties as trustee aforesaid, and has misapplied the said trust fund and appropriated the same to his own use.’ And thereupon the court appointed a referee ‘to take an account of said trust fund and of all payments made on account thereof by said defendant to said plaintiff, and report to this court what balance shall appear to be due from said defendant on account of said trust fund.’
“And the jury are instructed that the several statements of Alice Crookes above set forth are solemn declarations on her part in judicial proceedings, upon the truth of which said declarations Basil W. Alexander had the right to rely, and to forego steps he could otherwise have taken whilst Branch was still able to pay, or compel payment of said fund or to obtain security for its payment; and if the jury believe from the evidence that at the time the said Joseph W. Branch was *639 appointed trustee and presented to the probate court the receipt of June 1, 1885, given in evidence by defendant, and the probate court made the order of satisfaction and discharge also read in evidence by the defendants, he, the said Joseph "W". Branch, was possessed of property, subject to execution, out of which he could with reasonable effort and diligence, have transferred to himself as trustee the sum recited in said receipt, or that said sum could have been collected of him, by process of law, if some person other than himself had been appointed trustee; and if the jury further find from the evidence that thereafter, to wit, on or about the 25th day of November, 1881, the said Branch became insolvent and made an assignment of his property for the benefit of his creditors, and that thereafter he had no property out of which such transfer or collection could have been made, then the jury are instructed that the plaintiffs in this cause are now estopped to deny the truth of the declarations of said Alice Crookes above set forth, and your verdict must be for the defendant, Titman, administrator of the estate, of B. "W. Alexander, deceased, and Elizabeth M. Parkes, executrix of R. M. Parkes, deceased.”
The defendant here questions the judgment on the ground that the trial court erred in its action in giving of its own motion instruction No. 1; that this instruction when read in connection with instruction No. 2, given at the instance of defendant, withdrew from the jury the issue of fact as to when the conversion occurred.
"We find no merit in this contention. A careful reading of the record shows the facts to stand uncontradicted that during his curatorship Branch used the funds of his ward in his own private business, as well as a large amount of other moneys which he held in a fiduciary capacity. Erom the time of his appointment as curator, the estate of Alice Crookes was used in carrying on his'personal enterprises, and he continued to keep his ward’s money mingled with his own. "When *640 he presented his final settlement to the probate court no change had taken place, and none of his funds had been withdrawn from his business. The evidence upon these facts stands undisputed. They are testified to by Branch himself. The same thing is substantially shown by other witnesses and circumstances, and indeed such facts were never gainsaid or denied by the defendant at any time during the trial but were rather treated as conceded; nor was an instruction asked hypothecated or based upon facts which would put in issue the date of the conversion, but the trial proceeded upon a theory admitting this fact, but seeking to relieve defendant by a plea of estoppel.
In the former appeals of this case this court decided that the mingling of the trust fund with his own amounted to a conversation by Branch,and was a breach of the conditions of his bond as curator for which the sureties thereon became liable. Besides, defendant asked no instruction involving any other issue than that embraced in the one given by the court, before adverted to, and he can not now be heard to complain of the court’s action in that regard. It is well settled in this State that it is necessary only for the court to instruct the jury upon facts which are disputed, and the trial court is never called upon to frame an instruction which will exclude all contingencies or exceptions upon which there is no evidence, and especially where, as here, the complaining party makes no request at the trial for the giving of such instruction. If there had been any real controversy as to the facts above mentioned, making an issue as to whether or not the conduct of Branch had been such as to amount to a devastavit during his office as curator, defendant’s point now might be claimed with some merit, but where there is no actual controversy at the trial, and the facts are treated as conceded during the progress of the trial, it is not error in the court to predicate its existence on a declaration of law. The propriety of an instruction is always to be determined with reference to the *641 evidence touching the facts, and instructions are given to the jury to enable them to decide where there is a conflict. There being no conflict in testimony in that regard, it follows, that there was no issue of fact for the jury to decide, in respect thereto. It is the duty of the court only to lay before the jury hypothetically the question of fact to be passed upon; and as we have seen this was done by the instructions given to the jury by the court.
It was expressly decided on a former appeal of this controversy (134 Mo. 592) that the use of the funds of his ward in his private business amounted to a misappropriation by Branch; that such conversion could only be excused and his bondsmen relieved of their liability by showing that he had the cash actually in hand, or that after his appointment as trastee the amount of his ward’s estate was withdrawn from his business and taken in charge in that capacity.
It was further decided by this court on that appeal that even though Branch may have been solvent, with ample property out of which the balance due his ward might have been realized on execution, such fact would not relieve the sureties on his bond as curator of their liability.
A person holding funds in one fiduciary capacity can not by his own election shift the responsibility therefor from one set of sureties to another. He can not, as already seen, by signing a receipt to himself in the capacity of trustee, without having any funds at hand, transfer his liability and that of his sureties as curator to himself and his sureties .as trustee. It can only be done by the transfer of substantial assets. By the filing of the receipt in the probate court he solemnly declared and asserted that from that time it was his intention to hold the estate as trustee and not as guardian, but if he did not have the estate in his hands, and by reason of his insolvency was unable to turn over the estate, he could and did not come into possession of the funds in the capacity of trustee, and thus as guardian he failed to carry out the order of *642 the probate court, and for such dereliction of duty bis bondsmen were liable to tbe extent of jhe amount of tbe estate found by the probate court on final settlement to be in bis bands.
Tbe court, in passing upon these propositions, 112 Mo. 672, held, in substance, tbat tbe receipt was but prima facie evidence of payment, and tbat tbe entry of satisfaction based thereon was obtained by tbe purely ex parte act and representation of tbe fiduciary bimself, after be bad been false to bis trust, and while a judgment in favor of bis ward was outstanding against him for upwards of $19,000; and it would be a mockery of justice to permit tbe judgment debtor to satisfy a judgment against bimself, and this too without tbe payment of any money whatsoever.
Tbe case appears to have been tried throughout, in conformity with such decision. Tbe result of these former rulings, as well as tbe theory adopted by defendant on tbe trial below, narrows tbe controversy down to tbe effect to be given to acts and conduct of Alice Crookes; defendant contending tbat her consent amounted to an estoppel.
Tbe record disclosed tbat tbe plaintiff, Alice Crookes, admitted tbat Branch, after bis final settlement as curator, bad taken possession of her legacy as trustee. She petitioned tbe circuit court for bis removal, declaring be bad received and then held such funds as her trustee, and in tbat capacity bad misappropriated tbe same. She received money from Branch after bis appointment as her trustee., and acknowledged such payments by receipts to him in tbat relation.. She made tbe record herself, and can not be beard to complain now tbat she was misled or deceived by Branch as to tbe true condition of her affairs, or bad no actual knowledge as to bow her matters stood. If she did not know, it was on account of her own inexcusable negligence, .and she can not now excuse herself by pleading ignorance of what she should have known and could have learned by tbe exercise of proper diligence.
*643 But this alone does not constitute an equitable estoppel. While the sureties of Branch as curator had a right to repose confidence in the record and judicial declarations made by her, it must further appear that they had knowledge of such statements, and acted on such knowledge to their own detriment and injury; that they either took certain steps, or forebore some actions by reason thereof, that they would otherwise have failed to do in the one case, or would have done in the other whereby they suffered some injury. Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract or of remedy, as against another person, who has in good faith relied on such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, or contract or of remedy.
The standard text writers on this subject lay down the rule that the conduct of the party to be estopped must be relied upon by him who seeks the benefit of the plea, and further he must in fact act upon that conduct in such a manner as to change his position to another, whereby he is harmed. [2 Pomeroy Eq. Jur., sec. 805 ; Anderson v. Walker 49 S. W. Rep. (Tex.) 946.]
This record does not disclose that defendant Titman, administrator herein, or his principal, who was surety on the curator bond, ever knew of the declarations or statements, judicial or otherwise, or that he ever did, or failed to do, any single act in consequence thereof. It was the duty óf Branch’s curator bondsmen to see to it that the order made by the probate court requiring Branch as curator to turn over to the trustee the amount found to be due was carried out, and their liability did not cease until such order was carried out, or that they were prevented from fulfilling this duty by some act of *644 the ward, brought home to them, and upon which they relied, which made action on their part unnecessary. If any of these things were done, the record entirely fails to disclose it.
But even though none of these things were done by them, yet if in point of fact Branch as curator did turn over to Branch as trustee the sum so ordered by the probate court they would have been relieved of liability. And the instruction on this point goes even farther and declares that, if, at the time of his appointment as trustee, he could have trans- . ferred the trust funds to himself in the capacity of trustee, the plaintiff is estopped to show that he failed in that duty.
This question was fairly submitted to the jury upon the above quoted instruction given at defendant’s instance and one which, to say the least, was exceedingly liberal in its terms to defendant, and latitudinous in its scope, and of which he certainly can not be heard to complain. The issue of fact so made was fairly submitted in conformity with the opinion rendered on last appeal, and the jury found against the defendant. There was abundant testimony upon which to base such a verdict, and it being the peculiar province of the jury to pass upon the facts, we can not interfere with the finding on the showing made by this record.
Branch, himself, testified that in June, 1885, he was chargeable with $80,000, money which he held in a fiduciary capacity, belonging to various estates, and which had been converted to his own use; that at that time, his total indebtedness was $216,000. He had been a borrower for a long time prior to this occurrence. He owed his brother $60,000, which he never paid. His bank balance on June 16, 1885, was only $877, and the cashier of the bank where he deposited testified that on June 1, 1885, his account was overdrawn nearly $300, and that the bank stock he owned was pledged as collateral security, and that the bank held a mortgage on his home for upwards of $40,000. His assets, he claimed, amounted to $370,000, but it seems he arrived at that amount by estimat *645 ing the costs of the various enterprises in which he was interested. This included the bank stock, worth $7,500, which was pledged; $77,000 in mining interests, which he said had no market value; $50,000 for his home, which was mortgaged,, and afterwards sold for $25,000; $140,000 in the Branch-Crookes Saw Co.,- $20,000 of which was good will, and had never yet paid a dividend; $25,000 in a saw patent, which he admitted was worthless; and finally it was shown that in 1887 he made <an assignment and that the sales of his entire assets, only realized a few hundred dollars; and he further admitted that he had been called upon for the various trust funds which he had embezzled, including the one in question, he could not have paid them.
Defendant also asked three other instructions, which the court refused to give, of which action defendant complains. Upon an examination of these refused instructions it will be found that the pertinent parts thereof are fully covered by instruction numbered 2 given in behalf of defendant, and it is therefore considered that the rights of defendant were in no wise 'prejudiced and that he suffered no injury by the refusal of such instructions.
Branch was called ¡as a witness by plaintiff, and in his examination in chief testified that the funds of the estate of' Alice Crookes were being used in his private ventures, and at. the time of his final settlement in the probate court had not. been withdrawn, and that on the first of June, 1885, he did not have in his hands the amount of $19,832.15, for which he was chargeable. This was for the purpose of explaining o-r-contradicting the receipt filed as evidence of his acquittance as curator in the probate court.
Defendant then cross-examined Branch as to what assets, he had and the amount which might have been realized upon property then owned by him.
Afterwards, plaintiff, with -reference to the new matters-brought out by defendant, interrogated the witness by way- *646 of cross-examination, and elicited evidence tending to contradict statements made while being examined by defendant’s ■counsel.
This treatment of the witness was without objection at the time, and defendants’ complaint now that by offering the witness plaintiff vouched for his credibility and could not question his veracity, comes too late. Failing to object to the question propounded at the time, defendant waived the error if such, and this court will not review the matter now. Moreover, when defendant examined the witness upon new matters not drawn out in chief, but essential to his defense, it must follow that as to such new matters Branch became defendant’s witness, and by that course of conduct defendant did, in effect, make Branch his own witness as to the various new matters concerning which he was not questioned in chief, and touching such statements, plaintiff was entitled to cross-examine him independent of the statute expressly authorizing that mode of examination.
In speaking of the right to contradict a witness this court, in the case of Imhoff & Co. v. McArthur, 146 Mo. 371, said, that neither party was concluded by the testimony of its own witness upon a given point, but that he may show the true facts, even though they be at variance with the statements of his own witness.
But even though the rule was so harsh and rigid as to imply a voucher of Branch’s credibility by plaintiff, the jury would not be compelled to placidly believe all his statements,' but might disregard all or any part thereof, and the issues being fairly submitted by the instruction there is no prejudicial error on this point.
As to the point raised by defendant that counsel for plaintiff in their argument to the jury went outside of the record, misquoted the testimony and sought to prejudice the jury by denouncing Branch as unworthy of belief, we are bound to hold that question is not here for review: Such objection *647 was made for the first time on motion for new trial, and this court has repeatedly held that in order to make such objections available they must be made to the court at the time during the trial, and parties must save their exceptions if such objections are overruled, and upon failure to do so, such questions will not be considered by this court. [Doyle v. M., K & T. Trust Co., 140 Mo. 1.]
It is next objected that the court below erred in giving an instruction directing the jury in the event they should find for the plaintiff to assess the damages at the sum of $19,832.15, after deducting all credits, and adding proper interest. The circuit court then made the calculation and stated the result at $30,069. All the'credits claimed by defendants were allowed, the interest computed was legal and proper and we fail to see how defendant was prejudiced by such action.
It has been repeatedly held by this court that unless there is some error found which could have misled or influenced the jury, or changed the result, the judgment will not be reversed; and no such error is found in the ruling of which defendant complains. If a judgment was to go in plaintiff’s favor, the amount of $19,832.15, as well as the amount of defendant’s credits, were all practically agreed. "What would be the result of a, calculation upon those figures is not a matter of evidence upon which alone the jury could pass and make a determination; but it was and is an arbitrary sum, determinable by fixed rules of mathematics, which by their verdict the jury would have no right to alter.
Numerous other errors, as to matters occurring during the trial, are urged upon our attention for reversal. But after considering all the points made by appellant, we have concluded That no error has been committed materially affecting the merits of the cause.
On account of the eventful history of the case, the amount involved, the nature of the questions presented for review, and the ability and zeal with which counsel for both *648 ■litigants have presented tbeir case, we bave given tbe controversy a very careful consideration, and are unable to dis•cover any prejudicial error in tbe action of tbe circuit court. Tbe instructions given fairly submitted tbe issue to tbe jury upon tbe theory upon wbicb tbe case was tried, and tbeir ver■dict, finding substantial support in tbe testimony, should not be disturbed.
This case has been pending for ten years, and is now in this court on its fourth appeal, and unless some really prejudicial error is shown by tbe record, it would seem best to put an end to tbe litigation. After a careful search we find no nrror wbicb would justify an interference with tbe judgment by us. Tbe judgment of tbe circuit court is therefore affirmed.
All concur,