EMMA DORMAN v. EAST ST. LOUIS RAILWAY COMPANY, Appellant.—
75 S. W. (2d) 854.

Court en Banc, October 13, 1934.

*Lashly, Lashly & Miller* and *George F. Wise* for appellant.

*Louis E. Miller* for respondent.

ATWOOD, P. J.—This is an action for damages on account of personal injuries alleged to have been sustained by Emma Dorman while alighting from a street car of the East St. Louis Railway Company. Plaintiff obtained judgment for $10,250 from which defendant has appealed.

Plaintiff went to trial on her amended petition which contained the following specifications of negligence:

"1. That said street car was carelessly and negligently started forward before plaintiff had been allowed a reasonable opportunity to alight from same.

"2. That defendant carelessly and negligently failed and omitted to warn the plaintiff or to give her any signal of its intention to start the said car forward, in time to have permitted her to have restrained her movements and thus and thereby have saved herself from being thrown and injured as aforesaid.

"3. That defendant knew, or by the exercise of ordinary care on its part, could and should have known, that to start the said car forward without giving plaintiff a reasonable opportunity to alight from same was likely to cause her to be thrown and injured as aforesaid."

Defendant's answer consisted of a general denial and a plea of contributory negligence. Appropriate reference to the evidence will be made on consideration of the assignments of error urged by appellant.

Appellant's first assignment of error is to the action of the trial court "permitting the case to go to the jury over the objection of defendant after plaintiff had failed to submit any instructions other than the measure of damage instruction."

More than twenty years ago in Eversole v. Wabash Railroad Company, 249 Mo. 523, 529, 155 S. W. 419, we said that "the idea possessed by some lawyers that an instruction on the measure of damages in a personal injury case is all that they should attempt to write for fear of getting error in the record is an idea which when put into practice should be promptly condemned. There should in all cases be at least one principal instruction outlining to the jury the theory under the petition upon which recovery is sought. The jury should not be left to gather the theory of recovery from the petition, aided solely by a formal instruction upon the measure of damages. Nor should counsel cast the burden upon a trial judge to draw such an instruction." These words of admonition apparently fell on deaf ears because subsequent complaints that plaintiff's submission on a measure of damages instruction only was prejudicial error were

generally in effect met with the aphorism announced in Morgan v. Mulhall, 214 Mo. 451, 463, 114 S. W. 4, and drawn from earlier cases, that "mere non-direction is not misdirection." [Sullivan v. St. L.-S. F. Ry. Co., 321 Mo. 697, 12 S. W. (2d) 735, 740; Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S. W. (2d) 559, 563; Luikart v. Miller (Mo.), 48 S. W. (2d) 867, 870.] However, frequent resort to this character of submission in recent years has evoked fresh criticism and sharp judicial condemnation (Shumate v. Wells, 9 S. W. (2d) 632, 320 Mo. 536; Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S. W. (2d) 559, 562; Bello v. Stuever (Mo.), 44 S. W. (2d) 619; Iman v. Walter Freund Bread Co., 332 Mo. 461, 58 S. W. (2d) 477; Freeman v. Berberich, 332 Mo. 831, 60 S. W. (2d) 393; Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950, 956, 957), although for various reasons we have not yet reversed a judgment solely on that account. The bar is entitled as soon as possible to a clarification of the nature of this complaint and to be advised what, if anything, can be done about it.

The assumption that mere failure of the trial court to instruct the jury is not error in a civil case apparently rests on inferences drawn from some of our early decisions rendered when courts were deemed to have exclusive power to make and promulgate rules of practice, and other decisions rendered after the General Assembly began to treat this as a legislative function.

Harking back to the Territorial Laws of Missouri, we find that Chapter I of the Organic Laws embraces an Act of Congress approved March 26, 1804, providing for the temporary government of the territories ceded by France to the United States by treaty concluded at Paris on the thirtieth of April, 1803. Section 12 thereof, providing for the organization and administration of the government of "the district of Louisiana" from which the State of Missouri was afterwards carved, extended the executive power then vested in the Governor of the Indiana Territory thereto, and further provided that "the governor and judges of the Indiana territory shall have power to establish, in the said district of Louisiana, inferior courts, and prescribe their jurisdiction and duties, and to make all laws which they may deem conducive to the good government of the inhabitants thereof." [Missouri Territorial Laws, p. 5.] Among the courts created pursuant thereto was a "supreme court of record" styled "the general court" (Sec. 8, Chap. 13, p. 60, Mo. Ter. Laws), which was empowered "to direct, the writs, summons, process, forms and modes of proceedings to be issued, observed and pursued by the said general court." [Sec. 3, Chap. 11, p. 55, Mo. Ter. Laws.] Section 1, Chapter 30, pages 89, 90, Missouri Territorial Laws, provided for a jury trial in any suit pending in any court of record if requested by either party before the trial. Section 28, Chapter 38, page 116, of

the same laws provided that "rules of practice adopted by the general court, shall be adopted by the several courts of common pleas, and quarter sessions as far as the same may be practicable."

Section 1 of Article V of the first Constitution of Missouri established in 1820, vested the judicial power as to matters of law and equity "in a 'Supreme Court,' in a 'Chancellor,' in 'Circuit Courts,' and in such inferior tribunals as the general assembly may, from time to time, ordain and establish." [Laws 1925, p. 53.] Section 3 of the same article provided that "the supreme court shall have general superintending control over all inferior courts of law." Section 8, Article XIII of this Constitution also provided that "the right of trial by jury shall remain inviolate," and the above-noted territorial provision with reference to jury trial became a part of the statutory law. [Sec. 35, Chap. II, p. 630, Laws 1825.] Section 15, Article IV, page 463, Revised Statutes 1835, provided that all issues of fact joined in any suit in any court of record should be tried by a jury "when either party shall demand such trial and the cause is not referred." This statute, as subsequently amended (Sec. 6, p. 89, Laws 1848-9; Sec. 12, p. 1261, R. S. 1855), is now Section 948, Revised Statutes 1929, as follows: "An issue of fact in an action for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial be waived or a reference ordered as hereinafter provided." The constitutional provisions mentioned in this paragraph now appear, with some changes, in the Constitution of 1875 as Section 1, Article VI, Section 3, Article VI and Section 28, Article II, respectively.

The first legislative reference to instructions by the court to the jury that has come to our attention is Section 28, Article V, Chapter 138, page 882, Revised Statutes 1845. It related to criminal cases only and was as follows: "The court shall not, on the trial of the issue on any indictment, sum up or comment upon the evidence, or charge the jury as to matter of fact, unless requested so to do by the prosecuting attorney, and the defendant or his counsel, but the court may instruct the jury on any point of law arising in the cause, which instructions shall be in writing, unless the prosecuting attorney and the defendant consent to its being given orally." In 1847 an act was approved, Section 4 of which was as follows: "All instructions given by courts to juries shall be given in writing, unless all the parties concerned shall consent, that they may be given verbally." [Laws 1847, p. 110.] Section 47, chapter 128, governing practice in civil cases, page 1268, Revised Statutes 1855, was as follows: "When the evidence is concluded, and before the case is argued or submitted to the jury, or to the court sitting as a jury, either party may move the court to give instructions on any point of law arising in the cause, which shall be in writing, and shall be given or refused; the court

may, of its own motion, give like instructions." This section was carried forward *verbatim* into the Revision of 1865. [Sec. 47, chap. 169, p. 677, R. S. 1865.] As thereafter amended (Laws 1877, p. 360; Sec. 3655, R. S. 1879; Sec. 2188, R. S. 1889), it now appears as Section 967, Revised Statutes 1929, as follows:

"When the evidence is concluded, and before the case is argued or submitted to the jury or to the court sitting as a jury, either party may move the court to give instructions on any point of law arising in the cause, which shall be in writing and shall be given or refused. The court may of its own motion give like instructions, and such instructions as shall be given·by the court on its own motion or the motion of counsel shall be carried by the jury to their room for their guidance to a correct verdict according to the law and evidence; which instructions shall be returned by the jury into court at the conclusion of the deliberations of such jury, and filed by the clerk and kept as a part of the record in such case."

Apparently the first assertion of legislative supremacy in the making and promulgating of court rules and practice was Section 5, Article XXX, of an act of the General Assembly purporting to reform the pleading and practice in courts of justice, approved February 24, 1849 (p. 103, Laws 1848-49), as follows: "The present rules and practice of the courts, in civil actions, inconsistent with this act, are abrogated, but where consistent with this act they shall continue in force."

This bare assumption by the legislative branch of a function, which under the common law and previous territorial and state statutes as well as judicial decisions had been regarded as strictly judicial. is in itself a legislative recognition of the rule-making power of courts in matters of practice. This and subsequent.legislation in the same vein may be explained on the theory that courts were not so constituted as to be quickly responsive to needed reforms and Legislatures sometimes acted in matters strictly judicial because there was no other available organ for the expression of the popular will. From the standpoint of the public good it may not be important whether court rules and practice emanate from the judicial or the legislative branch of government as long as they promote the administration of justice. However, if the accomplishment of this end, for which courts were primarily created, is hampered or imperiled by rules of practice, whether of legislative or judicial origin, it will scarcely be said that a constitutional court of competent jurisdiction should omit or stay performance of any of its judicial functions because of prior legislative encroachment, or until the passage of a legislative act "conferring" judicial power. [In re Richards, 333 Mo. 907, 63 S. W. (2d) 672, 675.] By the mere encroachment of one branch of government and the neglect or even acquiescence there-

in of another neither branch can gain or lose power in contravention of the constitutional separation of powers. Bearing in mind certain recognized distinctions between Federal and State courts touching the relation of legislative and judicial powers, the duty of courts "by right of their own powers" to decline to enforce a rule of evidence the fallacy of which has been clearly demonstrated by experience is thus vigorously laid down by Mr. Justice SUTHERLAND in the recent decision of the Supreme Court of the United States in Funk v. United States, 54 Sup. Ct. 212, 215, 290 U. S. 371:

"The fundamental basis upon which all rules of evidence must rest—if they are to rest upon reason—is their adaptation to the successful development of the truth. And, since experience is of all teachers the most dependable, and since experience also is a continuous process, it follows that a rule of evidence at one time thought necessary to the ascertainment of truth should yield to the experience of a succeeding generation whenever that experience has clearly demonstrated the fallacy or unwisdom of the old rule. . . .

"The rule of the common law which denies the competency of one spouse to testify in behalf of the other in a criminal prosecution has not been modified by congressional legislation; nor has Congress directed the Federal courts to follow state law upon that subject, as it has in respect of some other subjects. That this court and the other Federal courts, in this situation and by right of their own powers, may decline to enforce the ancient rule of the common law under conditions as they now exist, we think is not fairly open to doubt."

So much for the background and authority of legislation relating to instructions from courts to juries. In territorial times and during the early period of statehood the giving of such instruction was evidently regarded as an exercise of judicial power inherent in courts. In McKnight & Brady v. Wells, 1 Mo. 14, 15, decided in 1821, this court said: "It is certainly the duty of the circuit courts to instruct the jury on all principles of law which may be applicable to the facts in evidence before them, and to refuse to do so, is error." To the same effect is Coleman v. Roberts, 1 Mo. 97, decided in the same year. In Drury & Wiseman v. White, 10 Mo. 224, 227, decided in 1847, the case was submitted to a jury without instructions being asked or given of the court's own motion. On appeal it was held too late for either party to say "that the jury were not properly instructed in the law." In Clark v. Hammerle, 27 Mo. 55, 70, decided in 1858 after passage of statute on instructions (p. 1268, R. S. 1855, supra), the court said: "In the trial of causes neither party is bound to ask instructions. If they are not asked, the giving them or not is at the discretion of the court. If instructions are asked on the whole case, or of any particular matter arising out of it, which the court refuses, it is not

bound afterwards to give instructions of its own as substitutes for those refused. If erroneous instructions are asked and refused, it is entirely at the option of the judge whether he will afterwards give any or not." In Tetherow v. The St. Joseph & Des M. Ry. Co., 98 Mo. 74, 86, 11 S. W. 310, decided in 1888, in connection with failure of the court to instruct on circumstances mitigating the damages, it was said: "The court is not required in a civil action to instruct the jury on questions of law not suggested at the time by parties or counsel." The substance of this pronouncement, doubtless applicable as there used irrespective of the statute, was loosely carried forward in subsequent opinions such as C. M. & St. P. Ry. Co. v. Randolph Town-Site Co., 103 Mo. 451, 468, 15 S. W. 437; Coleman v. Drane, 116 Mo. 387, 394, 22 S. W. 801; Browning v. Ry. Co., 124 Mo. 55, 72, 27 S. W. 644; Nolan v. Johns, 126 Mo. 159, 166, 28 S. W. 492; and Farmer v. Farmer, 129 Mo. 530, 539, 31 S. W. 926, finally crystallizing in the expression appearing in Fearey v. O'Neill, 149 Mo. 467, 477, 50 S. W. 918, decided in 1899, and substantially quoted early in this opinion, that "mere non-direction is not error."

It is not clear that this declaration in the Fearey case was intended as a binding interpretation of the statute, now Section 967, Revised Statutes 1929, but in Morgan v. Mulhall, 214 Mo. 451, 463, 114 S. W. 4, after quoting Thompson on Trials, section 2341, wherein it is said that "mere *non-direction, partial or total*, is not ground of new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused" (citing support of the English rule, that "non-direction, where specific direction is not requested, is no ground of new trial, unless it produce a verdict against the evidence)," the court said: "This is so because our statute on procedure in civil cases does not contemplate instructions whether or no. Parties litigant have their option to ask or not ask them." However, with characteristic wisdom and caution the writer, Judge LAMM, added: "In construing that section, the better view is that it is permissive, not mandatory. Doubtless it conduces to the science of jurisprudence and the orderly administration of the law to have instructions defining the issues, putting it to the jury to find the fact and declaring the law on the fact when found, but it is within the knowledge of the profession (and our decisions show) that cases are not infrequently tried, *nisi*, without them. That mere non-direction is not misdirection is a familiar, settled rule of appellate procedure. Under that rule, before appellant can predicate reversible error on what a trial court does not say to the jury, he must first put the court in the wrong by asking it to say something, or else the court in trying to cover the case by instructions holds a false voice, or omits in general instructions essential elements of the case." It is worthy of note that in this Mulhall case, notwithstanding plaintiff tendered and received only a measure of damages instruction and one

relating to the credibility of witnesses, defendant stood mute and neither requested the court to require plaintiff to submit an instruction covering plaintiff's theory of negligence nor submitted any instructions for defendant.

In the case of Powell v. Railroad, 255 Mo. 420, 456, 457, 458, 164 S. W. 628, this court, again speaking through Judge LAMM, reiterated the view expressed in the Mulhall case, that the statute was permissive, and further said that "a party had the option to ask or not ask instructions; that the court owed no duty to either party to give instructions either on its own initiative or in lieu of those refused. . . . But, in ruling after that fashion, nothing we have said is to be construed as favoring the submission of a cause to a jury without proper instructions on the rules of law applicable to the evidence and covering the whole case on issues essential to recovery. By virtue of the statute cited, instructions must be in writing. So observe, no matter which side asks them, they are, when given, the instructions of the court. In other words the court is the preclusive mouthpiece of the law *on the law*. The question is not here for decision, therefore, a ruling thereon is reserved; but, if the question were here, whether an attorney could argue the law (and thereby virtually orally instruct the jury on the law), absent instructions on the law by the court, we would hesitate long and ponder well before we held such a course would not be reversible error. A word to the wise is sufficient."

So our appellate courts have gone along holding that the right of parties to request instructions is a privilege which they may waive, that courts are not required to give instructions not requested by the parties, that mere nondirection. is not error; and, at the same time, condemning the practice of submitting causes to juries without instructions stating the issues and declaring the law applicable to the evidence thereon. These incongruous attitudes naturally result from our own interpretation of this statute as relieving both court and counsel of the duty of advising the jury through the court, which "is the preclusive mouthpiece of the law *on the law*," and our repeated rulings that such nondirection is not error no matter how unenlightened the jury may be as to the issues and the law applicable thereto in rendering their verdict.

As a matter of fact, the statute does not even purport to divest the courts of any power, and certainly it is no warrant for their failure to perform the judicial function of instructing juries when such instruction is necessary to enable them to decide cases according to the law and the evidence. When it is apparent to a trial judge that the nature of a case is such that the jury should be instructed as to the issues and the law he should see that such is done before the case is submitted and refuse to submit it otherwise, and counsel

for the respective parties, as officers of the court, should not fail to render the aid that may be rightfully expected from each of the parties to this end. As the plaintiff invokes the exercise by the court of its judicial powers and is asking at its hands a redress of a supposed wrong, the court rightfully demands of plaintiff as a condition precedent to the submission of his case that (1) plaintiff set forth in his petition "facts sufficient to constitute a cause of action," (2) that he produce competent evidence supporting such facts, and (3) why should he not be required, if necessary to the jury's understanding of its function in the case, to ask the court to give an instruction, formulated by him as that duty does not devolve on the court, informing the jury what facts if proven will warrant the jury in returning a verdict for him. Such instructions, when given and read to the jury, become the law of the case, declared so by the court, and in accordance with which the jury is sworn to return a verdict. It is just as much an exercise of the inherent power and duty of the court to see to it that the jury be informed as to the law of the case as it is that competent evidence be adduced supporting the facts necessary to constitute a cause of action. A failure in this respect constitutes at least prima facie error. When and to what extent the same duty devolves on the defendant need not now be discussed. The vice of not doing so is well indicated in our opinion written by Commissioner STURGIS in the case of Raymond D. Harlan v. Wabash Railway Company, 335 Mo. 414, 73 S. W. (2d) 749, 758. Where prejudice results to the losing party by reason of the court's failure so to do, and appellant has properly saved the point and is in position to press it, the judgment should be reversed and the cause remanded for retrial. Our previous rulings inconsistent with the views herein expressed are disapproved and should no longer be followed.

■ Turning to the record in the instant case, we find that the instructions given consist of plaintiff's requested instruction on the measure of damages, an instruction given on the court's own motion stating the number of jurors necessary to return a verdict and the manner of returning the same, and the following instructions given at the request of defendant:

"The court instructs the jury that if you believe and find from the evidence in this case that when the street car mentioned in the evidence came to a stop at Thirteenth and Missouri avenues, the motorman in charge of said street car opened the door of the front platform of said street car and that thereafter plaintiff undertook to alight from said front platform. And if you further believe and find from the evidence that while she was alighting from said front platform she, in some manner, missed her step and fell to the pavement. And if you further believe and find from the evidence that,

at no time after said car came to a stop and the front door was open and plaintiff attempted to alight therefrom, said car moved. And if you further believe and find from the evidence that at the time plaintiff fell said car was standing perfectly still, then and in that case plaintiff is not entitled to recover and you will find your verdict for the defendant.

"The court instructs the jury that plaintiff alleges in her petition that the injuries complained of by her were due to negligence on the part of defendant, in that said defendant, after stopping the car mentioned in the evidence, and when plaintiff was in the act of alighting therefrom, did negligently and carelessly start said street car up and did thereby throw the plaintiff and injure her.

"In this connection the court instructs the jury that before plaintiff can recover under said allegations she must prove the same to the reasonable satisfaction of the jury by a preponderance or greater weight of the evidence."

After the above-mentioned instructions were given and it became apparent that counsel for plaintiff purposed to go to the jury solely on a measure of damages instruction, counsel interposed the following objections, which were overruled and exception duly saved:

"The defendant objects to the plaintiff arguing the case or going any further with this case on the ground that the plaintiff has not given any instructions to the jury on what allegations of her petition, or on what ground she may be entitled under the evidence and the issues here to recover in this case, for the reason the defendant contends that plaintiff has abandoned all her allegations of negligence and is not entitled to a verdict in this case before the jury.

"Defendant also objects to the court permitting the plaintiff to go ahead and submit the case to the jury only on an instruction on the measure of damages, without any further instructions to the jury upon what ground they may find defendant guilty of negligence and entitled plaintiff to recover.

"The defendant also objects to the giving of the instructions on the measure of damages offered by the plaintiff and given by the court."

Counsel for respondents now insists that defendant's objections were not properly made and saved. This point is ruled against respondent. However, error without prejudice is no ground for reversal. [Brandon v. Carter, 119 Mo. 572, 585, 24 S. W. 1035; State ex rel. Hospes v. Branch, 151 Mo. 622, 643. 52 S. W. 390; Shinn v. United Rys. Co., 248 Mo. 173, 181, 154 S. W. 103.] From the state of the record we may presume that none of the pleadings were read to the jury, that all of the instructions given were read to the jury by the court, and it goes without saying that such instructions

would be understood and taken by the jury as the instructions of the court without information or regard as to who offered them in the first instance. Hence, the task here is to determine whether the jury was sufficiently instructed on the case made, notwithstanding plaintiff's failure to submit an instruction on her theory of liability, or was insufficiently instructed to defendant's prejudice.

Counsel for appellant say there was evidence: first, that the street car was carelessly and negligently started forward before plaintiff had a reasonable opportunity to alight; second, that defendant failed to warn plaintiff or give her any signal of its intention to start the car forward in time to have permitted her to have restrained her movements and thus have avoided being thrown and injured; third, that defendant knew that to start the car forward without giving plaintiff a reasonable opportunity to alight was likely to cause her to be thrown. Therefore, it is argued, plaintiff's failure to submit an instruction setting forth the facts upon which she was entitled to recover left the jury with "a roving commission to find for plaintiff upon whatever theory might occur to their minds as a basis for defendant's liability."

This argument is obviously unsound because, far from being given such a roving commission, the jury was very definitely advised by the instructions given at defendant's request as to the basis of defendant's liability, to-wit, "that said defendant, after stopping the car mentioned in the evidence, and when plaintiff was in the act of alighting therefrom, did negligently and carelessly start said street car up and did thereby throw the plaintiff and injure her." If, as counsel for defendant suggests, defendant's negligence was more fully pleaded and proved by plaintiff, why should defendant complain because the jury was not more broadly instructed on the issues of fact upon which plaintiff might recover? For aught that we can glean from the record the basis of defendant's negligence set forth in its given instructions is the only intimation the jury had of the issues made. These instructions very clearly and definitely stated facts, which if found by the jury, would entitle defendant to a verdict. They also very clearly and definitely set forth what purported to be plaintiff's allegations of negligence and advised the jury that "before plaintiff can recover under said allegations she must prove the same to the reasonable satisfaction of the jury by a preponderance or greater weight of the evidence."

It is true the jury were not instructed that before returning a verdict for plaintiff they must find that she was in the exercise of due care, or words to that effect. While defendant pleaded contributory negligence on the part of plaintiff it asked no instruction thereon. There is apparent reason for its failure to do so. We have searched the record in vain for any substantial evidence that plaintiff was guilty of contributory negligence. It seems clear that the

jury were sufficiently instructed on the whole case and defendant was not prejudiced by plaintiff's failure to submit an instruction setting forth her theory of liability.

Appellant next insists that the court denied defendant's counsel the right, in his argument to the jury, "to relate the evidence that a year prior to the case at bar plaintiff had had another case against defendant, in which she claimed to have been injured in a manner the same as, or similar to, the manner in which she claims to have been injured in the case at bar."

It appears from the abstract of the record that the following occurred during the argument of defendant's counsel to the jury:

"MR. OLIVER MILLER: You have here, gentlemen, first the plaintiff, Mrs. Dorman, who comes before you and says that as she was getting out of a car the car suddenly started up with a violent jerk and threw her seven feet from the car. That is the first story you have from the evidence, which, of course, is not the fact, because she is attempting to recover money on that story. Now, she has recovered money once before on that story, from the evidence.

"MR. LOUIS MILLER: I want to object to that; it was clearly brought out by defendant's own counsel while she was a passenger in the car she was thrown by something.

"MR. OLIVER MILLER: Give me an opportunity and I will explain.

"THE COURT: Objection will be sustained.

"MR. OLIVER MILLER: Objection will be sustained, your Honor? I am sure I don't know what I can say in connection with the plaintiff's own evidence.

"THE COURT: Read what he has stated:

(Record read.)

"To which action of the court in sustaining the objection to the argument the defendant at the time duly excepted and still continues to except.

"MR. OLIVER MILLER: I think that is very unfair, your Honor, very unfair; that is the evidence.

"THE COURT: Don't accuse the court of being unfair.

"MR. OLIVER MILLER: I beg your pardon, your Honor.

"THE COURT: That other case has nothing to do with this case. Proceed.

"MR. OLIVER MILLER: Your Honor will not permit me to go further with that argument?

"THE COURT: I see no occasion for it.

"MR. OLIVER MILLER: It is part of the evidence. May I comment on it?

"THE COURT: Well, read that statement.

(Record read, out of the hearing of the jury.)

"MR. OLIVER MILLER: I intended to proceed with the argument on that point and reiterate her testimony on it.

"THE COURT: Well, you should state what she testified to.

"MR. OLIVER MILLER: That is what I thought, your Honor. I want to beg your Honor's pardon if I misunderstood your Honor's ruling. (Thereupon, counsel for plaintiff made his closing argument to jury.)"

It seems from the foregoing that no injustice was done defendant. Its counsel was not denied the right to relate the evidence and argue the case, and the court's final ruling was apparently satisfactory.

Counsel for appellant also say that the court's remark: "That other case has nothing to do with this case," appearing in the above-quoted colloquy, is a comment upon the evidence amounting to reversible error. This remark appears to have been the outcome of an open charge by counsel for defendant that the court's ruling was "very unfair," for which counsel subsequently apologized to the court, after which the court and counsel reached an amicable understanding as to the fairness of the ruling and counsel's rights thereunder. Furthermore, no objection was then and there made to this remark, nor was any motion made to exclude it or that the jury disregard it, and appellant's present objection thereto must be overruled.

█ It is next urged that the court erred "in excluding from the evidence a written statement signed by witness Patricia Doyle made prior to the trial and inconsistent with her testimony in the case." An examination of the record fails to disclose that any proper foundation was ever laid for the admission of this proffered evidence. Therefore, the court did not err in excluding it.

█ Appellant's final contention is that the verdict was so excessive as to indicate that it was the result of bias and prejudice and was not based on the evidence. In case of an excessive verdict it is our usual practice to order a *remittitur*. It appears from the evidence that plaintiff sustained an impacted comminuted fracture of the surgical neck of the left humerus, and bruises on her left side and knee. Movement of her left shoulder had been interfered with so that she could not raise her left arm or hold even a plate in that hand very long, although prior to the accident, because of excessive flesh, she had only limited motion in her joints. As a result of her injuries she suffered an atrophy of this hand and arm. One of her physicians testified that he doubted whether she would fully recover from the injury, but that she might improve. She was fifty-nine years of age at the time she was injured and there is no evidence that she was gainfully employed. Compared with our rulings in similar cases we think the verdict was excessive by $2750. If a *remittitur* in this amount is filed in this court within ten days after the filing of this opinion, the judgment will stand affirmed for $7500.

Otherwise, the judgment will stand reversed and the cause remanded for a new trial.

Divisional opinion modified and adopted as modified as the opinion of the Court in Banc. All concur.