Nancy KINDLE, Plaintiff-Respondent,

v.

Leslie KEENE, Defendant-Appellant.

No. 13353.

Missouri Court of Appeals,
Southern District,
Division Three.

Aug. 24, 1984.

Kenneth L. Dement, Dement & Stamp, Sikeston, for defendant-appellant.

Robert A. Dempster, Joseph P. Fuchs, Dempster, Fuchs & Barkett, Sikeston, for plaintiff-respondent.

HOGAN, Judge.

This is an action for damages for personal injuries sustained by the plaintiff when her automobile struck the rear part of defendant's truck. The defendant had a verdict. The trial court granted plaintiff a new trial on two grounds of instructional error, specifically: 1) Defendant's verdict-directing instruction, which submitted plaintiff's failure to act after danger of collision became apparent—MAI 17.04 [1]—in bar of plaintiff's recovery, did not define the term "highest degree of care"; and 2) the specifications of contributory negligence submitted by the same instruction "[went] beyond the evidence adduced at [the] trial." We affirm.

■ When, after a verdict for the defendant the trial court grants plaintiff a new trial on the ground of defendant's instructional error and defendant appeals, the trial court's action must be reviewed as a question of law upon the record presented. *Bayne v. Jenkins*, 593 S.W.2d 519, 530[6–8] (Mo. banc 1980).

This accident occurred on December 4, 1981, in Mississippi County. Immediately before the collision, plaintiff Nancy Kindle was driving south on Highway 105, on her way home from work. This segment of Highway 105 is a two-lane blacktop highway 24 feet wide. At the place where the collision occurred, the highway runs north and south. North and west of the point of impact, there is a sharp bend in the road. This bend is called "Big Book Curve." There was evidence that during daylight hours, this curve totally obscures a southbound motorist's view until he is within one-fourth to four-tenths of a mile north of the point of collision.

As the plaintiff was driving south, defendant Keene was preparing to move his 55-foot tractor-trailer unit onto the highway from a private driveway which intersects Highway 105 at a right angle from the east. He intended to turn left onto the highway and proceed south.

Upon trial, plaintiff testified she was driving home from work, that is, from Charleston to East Prairie, about 5:30 p.m. It was already dark. As she rounded Big Book Curve, plaintiff was going about 50 miles per hour. As she approached Big Book Curve, plaintiff dimmed her headlights to accommodate an oncoming vehicle. Inferably, her lights were still on low beam after she turned the curve. Then, in plaintiff's words, "As I approached the driveway of Mississippi County Grain Company [from which defendant's tractor-trailer was emerging] the trailer pulled out in front of me. He was in the process of making his turn. He was blocking both sides of the highway." Plaintiff swerved to the right to avoid a collision, but the front part of her vehicle collided with the right rear part of the defendant's trailer. Plaintiff's further testimony was that there were no lights on the defendant's trailer.

The defendant testified he had been talking to his wife just before the accident. Defendant's wife and stepdaughter were parked in the driveway next to his truck; he had admonished his wife not to back onto the highway because the traffic was very heavy. The defendant got into his vehicle and looked both north and south. He waited for a southbound vehicle to pass and then started out onto the highway. He did not see the plaintiff's automobile approaching, because "It had to be around that corner." After the defendant's tractor had moved approximately "75, 80 feet" the plaintiff's automobile struck the trailer from the rear. There was speculation, but no evidence, concerning the turning radius of a 55-foot tractor-trailer unit. The defendant testified his trailer was well lighted. The force of the collision was such that "It tore the hitch off of the back [of the trailer], knocked one taillight out, and it

1. References to MAI are to Missouri Approved Jury Instructions (3d ed. 1981).

cut the [dual wheels] loose on the right side and moved them forward about two foot."

One further circumstance is significant on this appeal. The accident occurred at night. There were no street or highway lights on the road at the point of collision, although as plaintiff's exhibit 10 shows, there are neither trees nor foliage close to the right-of-way. As we have noted, it may be inferred that traffic was heavy on Highway 105 at the time the accident occurred.

The defendant's verdict-directing instruction, given as Instruction No. 10, hypothesizes 9 acts of contributory negligence in bar of plaintiff's recovery. Defendant's fourth specification is that:

"Plaintiff Nancy Kindle knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped, swerved, slackened her speed or sounded a warning or any combination thereof but plaintiff Nancy Kindle failed to do so ...."

The Notes on Use to MAI 17.04 indicate that one or more of the specifications provided therein may be submitted as an act of contributory negligence as well, but they also provide that the phrase "highest degree of care" must be defined. MAI p. 210. The language is mandatory, not permissive. The parties have ignored the fact that the fourth specification probably constitutes an erroneous conjunctive submission, *Cook v. Cox*, 478 S.W.2d 678, 681 (Mo.1972), and we will not discuss that aspect of the instruction, though it must be noted. Citing us to *Knowles v. Goswick*, 476 S.W.2d 563, 567[4] (Mo.1972), and other tangentially apposite precedents, defendant argues it was unnecessary to define the phrase "highest degree of care" in the body of Instruction No. 10 because that term was defined in Instruction No. 6. Instruction No. 6 read as follows:

"The term 'negligent' or 'negligence' as used in these instructions means the failure to use that degree of care that a very careful and prudent person would use under the same or similar circumstances."

This instruction is, of course, part II of MAI 11.02. MAI 11.01 and 11.03 both explicitly define the term "highest degree of care" and it is doubtless true that the phrase "highest degree of care" need not, and should not be defined twice. *Knowles v. Goswick*, 476 S.W.2d at 567[4]. Instruction No. 6 is neither MAI 11.01 nor 11.03, however, and the argument that the terms "negligence" and "highest degree of care" are synonymous and need not be separately defined was explicitly rejected by our colleagues at St. Louis in *Doyle v. Bi-State Development Agency*, 628 S.W.2d 695, 697 (Mo.App.1982). In this case, no instruction explicitly defines the term "highest degree of care." The defendant failed to follow the Notes on Use appended to MAI 17.04 in drafting his Instruction No. 10; his failure to do so is presumed to be error, and the only remaining question is whether it was prejudicial. *Gormly v. Johnson*, 451 S.W.2d 45, 47[2] (Mo.1970). Consideration of the error in light of the facts, as required by *Bayne v. Jenkins*, 593 S.W.2d at 530, does not dispel the presumption of prejudicial error.

The foundation of Missouri's law of jury instructions was laid by our Supreme Court's decision in *Dorman v. East St. Louis Ry. Co.*, 335 Mo. 1082, 75 S.W.2d 854 (banc 1934). There the court vigorously rejected "the aphorism" that "mere non-direction is not misdirection" and held:

"It is just as much an exercise of the inherent power and duty of the court to see to it that the jury be informed as to the law of the case as it is that competent evidence be adduced supporting the facts necessary to constitute a cause of action. *A failure in this respect constitutes at least prima facie error*." (Our emphasis.)

Id., 335 Mo. at 1092, 75 S.W.2d at 859. See also 1 Raymond, Missouri Instructions to Juries § 1 (1942). The efforts of our courts to effectuate this decision led us into a quagmire which made the development of the MAI necessary, but the principle remains.

■ Another fundamental rule, which has been the law in this state since *Stakelback v. Neff*, 13 S.W.2d 575, 577[1] (Mo. App.1929), was decided, is that:

"... the law imposes [no] duty upon the driver of an automobile, upon approaching and entering an intersecting street, to stop, decrease the speed of, or change the course of, his car, merely because he sees another automobile in the street ahead of him. To the contrary, such duty to act would clearly not arise, *unless the exercise of due care upon the part of the driver would lead him to believe that otherwise a collision would occur."* (Emphasis ours.)

Id. at 577[1]. Of course the law has changed in some respects since Judge Bennick wrote in 1929; for a good many years the statute which is now § 304.010.1, RSMo 1978, has required all motorists to exercise the "highest degree of care." The principle remains the same and the plaintiff's duty to act under the quoted part of Instruction No. 10 did not arise until the exercise of the highest degree of care made it apparent there was a reasonable likelihood of collision if she did not act to avoid it. *Thompson v. Gray*, 415 S.W.2d 299, 305, and cases cited n. 7 (Mo.App.1967).

■ There was evidence in this case that it was dark when the accident happened and that traffic on the highway was heavy at the time. There was evidence from one witness that under daylight conditions, a southbound motorist should have been able to see the point of impact "roughly 2,112 feet" to the north. There were some photographs of the area taken in the daytime. As this court observed a good many years ago in *Simmons v. Shomer*, 395 S.W.2d 507, 513–14[6, 7] (Mo.App.1965), such evidence does not necessarily establish visibility *at night.* The defendant himself testified that he looked to the north and did not see the plaintiff's lights approaching. Evidence was received without objection that a 55-foot tractor-trailer would move very slowly from the edge of the intersecting driveway into the plaintiff's path. The low-beam composite of plaintiff's headlamps, assuming they met statutory standards, would only have revealed persons and vehicles 100 feet ahead. Section 307.060(2), RSMo 1978.

■ This court knows there was *some* visibility; the rays of light coming from different sources at night blend into a composite illumination. *Lynch v. Missouri-Kansas-Texas R. Co.*, 333 Mo. 89, 97, 61 S.W.2d 918, 921 (1933). Failure to act after a danger of collision becomes apparent may be submitted even though there is no precise evidence of speeds and stopping distances, *Jefferies v. Saalberg*, 448 S.W.2d 288, 292–95[3] (Mo.App.1969), and possibly the plaintiff should have seen the defendant sooner than she did. Usually, that question is for the jury. *Slaughter v. Myers*, 335 S.W.2d 50, 54 (Mo.1960); *Wilkerson v. State Farm Mutual Automobile Ins. Co.*, 510 S.W.2d 50, 54–55 (Mo.App. 1974). For these very reasons, the jury should have been given some guide by which to determine when it *should have* become apparent the two vehicles would collide if she did not act. The charge, read as a whole, gave the jury no such guide, and there was prejudicial error for that reason, if for no other.

■ When several grounds are assigned by a trial court for its action in granting a new trial, the action must be upheld on appeal if any one of the grounds is valid. *Kuzuf v. Gebhardt*, 602 S.W.2d 446, 449[2] (Mo. banc 1980); *Davis v. Perkins*, 512 S.W.2d 868, 870 (Mo.App.1974). We need not consider the other ground assigned. The judgment is affirmed.

CROW, P.J., and MAUS, GREENE and PREWITT, JJ., concur.