STATE OF MISSOURI at the relation of the TERMINAL RAILROAD ASSOCIATION of St. Louis, a Corporation, Relator, v. JEFFERSON D. HOSTETTER, WILLIAM D. BECKER and EDWARD J. McCULLEN, JJ.— 119 S. W. (2d) 208.

Court en Banc, August 8, 1938.

*T. M. Pierce, J. L. Howell* and *Walter N. Davis* for relator.

*Eagleton, Waechter, Yost, Elam & Clark* for respondents.

ELLISON, J.—Certiorari to the judges of the St. Louis Court of Appeals bringing up the record in Brown v. Terminal Railroad Assn., 85 S. W. (2d) 226 (hereinafter called the Brown case), wherein

the plaintiff recovered a judgment against the relator Terminal Railroad Association in the Circuit Court of the City of St. Louis in October, 1933, for $7500 damages for personal injuries sustained in a collision between the automobile he was driving and one of the relator's freight trains in East St. Louis, Illinois. On appeal the respondents affirmed that judgment.

The two assignments of conflict are that respondents' opinion ruled it was not reversible error for the trial court: (1) to permit plaintiff to go to the jury without any instructions hypothesizing his theory of relator's negligence, the only instruction given at his request being one on the measure of damages; (2) and to deny relator's counsel the right to comment in their argument to the jury on plaintiff's failure to offer such instructions. Relator contends these rulings contravene the following decisions of this court: Freeman v. Berberich, 332 Mo. 831, 60 S. W. (2d) 393; Dorman v. E. St. L. Ry. Co., 335 Mo. 1082, 75 S. W. (2d) 854; Yerger v. Smith, 338 Mo. 140, 89 S. W. (2d) 66.

The facts in the Brown case, as disclosed in respondents' opinion, were that about 2:30 A. M. on a dark night in a drizzling rain the plaintiff was driving an automobile along Illinois State Highway No. 4 in East St. Louis at a point where it crosses relator's railroad tracks approximately at right angles. A string of box cars was standing on one of the railroad tracks ten or fifteen feet from the highway intersection. There were no lights on the freight cars, no trainmen on guard and no warning signals—nothing to indicate they were attached to a locomotive at the other end and about to be moved. There were twenty cars in the train making its length approximately 800 feet. Plaintiff saw the cars standing there and after stopping his automobile drove on across the tracks when the freight cars backed up and struck the right rear fender of the automobile pushing or dragging it forty or fifty feet. Then the train stopped. The plaintiff got out and endeavored to extricate his fellow passenger from the automobile. While so engaged, the train started forward dragging the automobile and the plaintiff back to within six or eight feet of the crossing.

The negligence of the trainmen as charged in plaintiff's petition was: (1) failure to keep a lookout; (2) failure to give any signal or warning of the movement of the train; (3) failure to stop or slacken the speed of the train to avert the collision, or to keep the same stopped and motionless; (4) violation of the Illinois last chance doctrine, in that relator's trainmen saw or by the exercise of ordinary care could have seen the plaintiff in a position of imminent peril in time to have avoided the collision by stopping or slowing up the train or by giving warning signals; (5) pushing the automobile back after it was struck, and dragging it and the plaintiff forward after

the train had stopped the first time; (6) movement of the train without sounding bell or whistle eighty rods from the crossing, as required by the Illinois statute; (7) failure to have a brakeman stationed on the rear of the train; (8) failure to have a light on the rear of the train. There were still other assignments of negligence but they were withdrawn by instructions from the consideration of the jury.

Much of relator's brief is devoted to a discussion of the merits of the case and an effort is made to demonstrate that the evidence failed to support many of the specifications of negligence pleaded in the petition. Relator's theory in this connection is that if plaintiff had asked instructions on these several unsupported assignments of negligence the trial court would have been compelled to refuse them, and thus would have excluded from the case the issues covered by them; but that since he was permitted to submit his case without any instructions (except on the measure of damages) he was left free to argue all these unproven charges to the jury. Relator stresses these facts as showing the grievous error in such broadside submissions without instructions, and further says the practice of trying cases that way has become a "racket" in St. Louis. Proper objections were made and exceptions saved but relator did not, as appears from respondents' opinion, ask any withdrawal instructions which were denied on these assignments of negligence, except one, Instruction E, attacking the third assignment set out in the last paragraph above. And respondents held that Instruction E was properly refused.

The trial court gave six instructions at relator's request: (1) cautioning the jury against resorting to speculation or conjecture; (2) on plaintiff's contributory negligence if he failed to stop, look and listen; (3) stating that negligence is a positive wrong and cannot be presumed; (4) on the burden of proof; (5) on the proposition that mere proof of injury is no proof of negligence; and that plaintiff must show by evidence that defendant was guilty of negligence "as defined in these instructions;" (6) defining ordinary care. We shall not attempt a fuller summarization of these instructions as they were set out in the report of the Brown case in 85 S. W. (2d) l. c. 231.

█ Getting back to the basis of this original proceeding in certiorari, it will be remembered the relator's contention is that respondents' opinion contravenes three decisions of this court in affirming the judgment plaintiff obtained in the circuit court by submitting his case to the jury without any instructions hypothesizing his theory of recovery, except one on the measure of damages. But respondents' opinion was delivered in July, 1935, several months *before* one of these three cases. Yerger v. Smith, 338 Mo. 140, 89 S. W. (2d) 66, was decided in December, 1935, and therefore cannot be said to have

contravened it. The opinion was delivered *after* Freeman v. Berberich, 332 Mo. 831, 60 S. W. (2d) 393 (another of the cases cited by relator) was decided in April, 1933, but the argument in relator's brief does not mention it and nowhere in the brief is an effort made to point out wherein respondents' opinion conflicts with it. As a matter of fact the Freeman case does not hold it is reversible error to submit a case to the jury without instructions except upon the measure of damages. This leaves for consideration the third case cited by relator, Dorman v. E. St. L. Ry. Co., 335 Mo. 1082, 75 S. W. (2d) 854, which decision alone is discussed in relator's brief.

The Dorman case was decided en banc in October, 1934, before the delivery of respondents' opinion in July, 1935. To get a full understanding thereof the decision must be read as a whole. The substance of its conclusions may be extracted as follows:

"When it is apparent to a trial judge that the nature of a case is such that the jury should be instructed as to the issues and the law, he should see that such is done before the case is submitted and refuse to submit it otherwise, and counsel for the respective parties, as officers of the court, should not fail to render the aid that may be rightfully expected from each of the parties to this end. . . . It is just as much an exercise of the inherent power and duty of the court to see to it that the jury be informed as to the law of the case as it is that competent evidence be adduced supporting the facts necessary to constitute a cause of action. A failure in this respect constitutes at least prima facie error. . . . Where prejudice results to the losing party by reason of the court's failure so to do, and appellant has properly saved the point and is in position to press it, the judgment should be reversed and the cause remanded for retrial. Our previous rulings inconsistent with the views herein expressed are disapproved and should no longer be followed."

Several things are to be noted about this Dorman case. In the discussion preceding the above quotation, the decision concedes it is announcing a new rule of procedure based upon the inherent power of the courts and enlarging upon Section 967, Revised Statutes 1929 (Mo. Stat. Ann., p. 1240). There is an exhaustive review of the earlier cases, a number of which had criticized the practice of submitting cases to juries without instructions, but it is added that "for various reasons we have not yet reversed a judgment solely on that account." Cases announcing the doctrine that mere nondirection is not error are overruled. But the decision does not lay down a hard and fast rule to the contrary that mere non-direction is reversible error. What it holds is "when it is apparent to a trial judge that the nature of a case is such that the jury should be instructed as to the issues and the law, he should see that such is done before the case is submitted. . . ." A failure to require instructions con-

stitutes prima facie error. But it is only "when prejudice results to the losing party" by reason of the trial court's failure in that regard, that the judgment should be reversed. As a matter of fact the Dorman decision did not reverse and remand the case it was adjudicating, because it found the jury had been sufficiently advised by two instructions given at the request of the defendant.

Logically, the first point made by counsel for respondents is this. They contend in their brief that the Dorman case cannot be considered in this certiorari proceeding because it was not decided until a year after the instant Brown case had been tried in the circuit court. Their theory is that changes in procedural law operate *prospectively* only, and that since the action of the circuit court in submitting the Brown case to the jury without instructions predated the Dorman case the latter cannot be made to operate *retrospectively* against such procedural action. [State ex rel. May Department Stores Co. v. Haid, 327 Mo. 567, 586, 38 S. W. (2d) 44, 53; State ex rel. Midwest Pipe & Supply Co. v. Haid, 330 Mo. 1093, 52 S. W. (2d) 183; State ex rel. Blackmer & Post Pipe Co. v. Rosskopf, 331 Mo. 793, 55 S. W. (2d) 287; Lober v. Kansas City (Mo. Div. 1), 74 S. W. (2d) 815, 824; Harke v. Haase, 335 Mo. 1104, 1112, 75 S. W. (2d) 1001, 1005.]

But the date of the trial and judgment in the circuit court in the Brown case is not given in respondents' opinion, though it does appear in the record certified to this court by respondents. Unless we can go outside respondents' opinion and look at that record to ascertain the fact, we cannot judicially know that the Brown case was tried before the Dorman case was decided; and hence there would be no basis for deciding respondents' point. The general rule is that we are confined to the opinion of a Court of Appeals in getting the evidentiary facts. [State ex rel. Union Biscuit Co. v. Becker, 316 Mo. 865, 293 S. W. 783; State ex rel. Horspool v. Haid, 328 Mo. 327, 40 S. W. (2d) 64; State ex rel. Talbott v. Shain, 334 Mo. 617, 66 S. W. (2d) 826.] At the same time it is often said certiorari brings up the record proper, or the record, for the purpose of determining judicial questions. [State ex rel. Kennedy v. Remmers, 340 Mo. 126, 131, 101 S. W. (2d) 70.] And of course the entry of the judgment would be a part of the record proper.

There is no doubt about the fact that this court can quash an opinion of the judges of a Court of Appeals where they lacked jurisdiction to render the particular judgment in the cause, regardless of whether the opinion conflicts with our own cases. [State ex rel. Clark v. Shain, 343 Mo. 66, 119 S. W. (2d) 971.] And for that purpose we may examine the record proper of the Court of Appeals for such errors although they are not disclosed in the opinion of the judges. While we must go to the opinion for the evidentiary facts when certiorari is sought on the ground of conflict in opinions, yet conflict

of opinions is only one species of jurisdictional excess, made so by Section 6, Constitutional Amendment of 1884, and reviewable by certiorari under Section 8 of the same amendment. But we do not see how it would solve the question if we were to look at the record proper in this case.

There is no contention here that the St. Louis Court of Appeals did not have jurisdiction of the Brown case. Neither did the respondent judges hold the judgment of the circuit court in that case was invalidated by the Dorman decision; on the contrary they distinguished the decision from their own. The question before us is whether the respondents in *what they said* contravened the Dorman case. Perhaps respondents' counsel mean that even if we disagree with respondents' opinion and should find there is conflict between it and the Dorman case, still we cannot quash the opinion because the Dorman case was not decided until after the Brown case had been tried. But we do not agree to that. We are not sitting as a court of appeals in this case but as a supervisory court, and if in the circumstances just hypothesized we should let respondents' opinion stand because the *circuit* court committed no error, we would be passing on to the bar and the public an erroneous precedent contravening our own decisions. So we rule this point against respondents.

But we hold respondents' opinion does not contravene the Dorman case. They quoted all we have extracted above from that decision, and more. Then they held that in view of the evidence the jury were sufficiently advised as to the issues by the six instructions given at relator's request. The opinion declares negligence on the part of relator's trainmen was abundantly shown and inferentially holds the question of plaintiff's contributory negligence was the important issue. On that issue the jury admittedly were adequately instructed.

Relator contends the jury were not sufficiently instructed, and that in addition to the six instructions given at its request, the plaintiff should have offered instructions on such of his eight assignments of negligence as he desired to make the foundation of his case. He says the failure to do that left the jury in the dark and gave plaintiff's counsel a roving commission in argument. The argument of plaintiff's counsel (as bearing on that contention) is not preserved in the opinion. The Court of Appeals had a right to decide whether the lack of instructions on plaintiff's side of the cause prejudiced the relator. The Dorman case leaves the way open for the trial and appellate courts to determine that question in every case. The respondents held that it did not do so in the Brown case. It makes no difference whether we agree with that conclusion or not. We have never ruled to the contrary on the same or similar facts. There is, therefore, no conflict.

Relator criticizes certain parts of respondents' opinion, as where it says, speaking of Eversole v. Wabash Railroad Co., 249 Mo. 523, 529, 155 S. W. 419, 421, decided by Judge GRAVES: "We do not understand that the learned judge intended by this language to suggest that it is better that the jury be erroneously instructed than that they be not instructed at all, nor that the plaintiff should be required to draft and procure instructions to be given to the jury to afford the defendant the means of getting a reversal on appeal of an adverse judgment by finding fault with the instructions so given." While that observation probably was unnecessary to a decision of the case, we do not entertain certiorari for the purpose of editing opinions of Courts of Appeals.

Again, the opinion says that while there were no instructions indicating to the jury the specific acts of negligence relied upon by plaintiff, yet relator could have had such instructions for the asking but elected to stand on the general instructions requested by it. If the Dorman case decides anything it is that a plaintiff's failure to request necessary instructions hypothesizing his theory of liability is not excused because the defendant could have asked such instructions. But since respondents held the instructions given at relator's request were sufficient to save the case from error, we cannot quash the opinion, there being no conflict.

Another assignment of conflict is respondents' ruling that it was not error for the trial court to deny relator's counsel the right to comment in argument to the jury on plaintiff's failure to offer instructions explaining his theory of relator's negligence. This assignment also is based on the Dorman case alone. As a matter of fact the case does not pass on any such question. But in view of what we have already held with respect to the instructions further discussion of the assignment is unnecessary. For the reasons stated, our writ is ordered quashed. All concur, except *Douglas, J.,* not sitting because not a member of the court when cause was submitted.