Eugene F. SWYDEN, Edwina Swyden, his wife; Lewis Allen and Betty Allen, his wife; Thomas Wiley and Jean Wiley, his wife; and Robert Bernhardt and Dorothy Bernhardt, his wife, Respondents,

v.

JAMES H. STANTON CONSTRUCTION CO., Inc., a corporation, Appellant.

No. 47508.

Supreme Court of Missouri,

Division No. 2.

June 13, 1960.

James A. Moore, Laird P. Bowman, Kansas City, Gage, Moore, Park & Kreamer, Kansas City, of counsel, for appellant.

Albert Thomson, Tom J. Helms, Kansas City, Davis, Thomson, VanDyke, Fairchild & Walsh, Kansas City, of counsel, for respondents.

BOHLING, Commissioner.

Mr. and Mrs. Eugene F. Swyden, Mr. and Mrs. Lewis Allen, Mr. and Mrs. Thomas Wiley and Mr. and Mrs. Robert Bernhardt instituted this action against the James H. Stanton Construction Company, Inc., a corporation, for damages arising out of the purchase between November 3, 1954, and January 21, 1955, by the several couples from defendant of their respective homes in Western Hills subdivision in Jackson County, Missouri. Defendant was then engaged in developing said subdivision. The area involved became a part of Kansas City on January 1, 1958. The damages were laid at $10,000 to each of the respective homes. The several verdicts of the jury were for the defendant. The court sustained the plaintiffs' motion for new trial on the ground "the verdict was against the

weight of the evidence." Defendant has appealed, and contends that its motion for a directed verdict at the close of the evidence should have been given.

The claims of the plaintiffs arise out of damage by water to their several properties, allegedly caused by the defective drainage of the subdivision. Count I of their joint petition sounded in fraud and deceit and Count II sounded in negligence.

No question is presented respecting the pleadings. The issue for determination with respect to Count I of the petition is presented in the following quotation from plaintiffs' only verdict directing instruction, which required findings, so far as material here, as follows:

"If you find and believe from the evidence that the defendant represented to Mr. or Mrs. Swyden, Mr. or Mrs. Allen, Mr. or Mrs. Wiley and Mr. or Mrs. Bernhardt that the property described as Lots 311, 312, 313, and 315 in Western Hills met or exceeded certain minimum property requirements as to drainage as specified in the rules and regulations of the Veteran's Administration, which in turn referred to the rules and regulations of the Federal Housing Administration; and if you further find that the minimum property requirements of the Federal Housing Administration at that time provided that grading or drainage shall be performed so that water will drain away from the building on all sides and off the lot in a manner which will provide reasonable freedom from erosion, and that * * * then your verdict must be in favor of all of the plaintiffs and against the defendant."

Plaintiffs, in the Statement portion of their brief, say they accept defendant's Statement of Facts, but make a supplemental statement of about a page in length wherein conclusions are stated with respect to the evidence on Count I and Count II:

The area of Western Hills subdivision is approximately 25 acres. The slope of the subdivision is to the west and the south and into Dyke's Branch (referred to as a creek in the record), which runs back of the lots purchased by the plaintiffs. Defendant had several exhibition or sample homes on the subdivision. Signs on the lots showed the number of the lot, but not its dimensions. Plaintiffs purchased their respective lots prior to the completion of the curbs, gutters, street pavements, drainage facilities, retaining walls, storm inlets, et cetera. The purchases were made after ascertaining the location of the lot, viewing a plat or plats of the subdivision, and selecting the model home desired. Plaintiffs' lots are located on the westerly side of Holly Street at its intersection with 90th Street Terrace, and the 25 acres drain to that intersection.

From north to south, the plaintiffs' ownerships are as follows: The Wileys, Lot 311, 9008 Holly Street. The Allens, Lot 312, 9010 Holly. The Bernhardts, Lot 313, 9012 Holly. Mr. Swyden, Lot 315, 9016 Holly. Each contract of sale and purchase designated the lot involved by lot and street number, and provided for the construction of a house, designating the plan selected, "as per specifications submitted to the Veterans Administration." Each contract was explicitly made contingent upon the buyers' negotiating with the Missouri Valley Investment Company a GI loan of a stated amount within a specified time, and (quoting): "If the buyers are unable to obtain a loan commitment in the time specified, this contract shall be null and void and the earnest money deposited shall be returned to the buyers * * *." Another provision reads: "If credit or loan approval cannot be obtained, then the amount herein paid shall be refunded to the buyers by the seller, promptly." The recited price for the property and the amount, respectively, of the GI loan to be secured by the purchaser, upon which each contract was made contingent, were: The Wileys, $16,917 and $16,350. The Allens,

$14,052 and $13,300. The Bernhardts, $13,-675 and $12,950. Mr. Swyden, $16,065 and $15,250.

There was no complaint by any plaintiff with respect to the house constructed for them by the defendant.

The plaintiffs had moved into their homes by May, 1955. Broadly, their testimony was that when it rained heavily water drained onto their properties, flooded their yards and basements (in some of the basements to a depth of several feet), and from this drainage and the rise of water in the creek, erosion occurred, particularly at the rear of their lots. Provision was made for the surface water on their lots to flow to the creek through grassy swales between the houses. Plaintiffs' main complaints involve rains occurring in May, 1955, in 1956, in 1957, and in 1958. The Bernhardts and Allens appear to have sustained the most damage. The heaviest rain was in July, 1958, which, according to one of the plaintiffs, "flooded things all over Kansas City." A six or eight inch retaining wall was constructed along the front of lots 313 (the Bernhardts' lot) and 314 after the rain of May, 1955, but it does not hold back the water all the time. There was testimony that the several plaintiffs had made expenditures in nominal amounts, the largest testified to being $40, for dirt, grass seed and fertilizer. Mr. Allen had ordered work to be done on his basement floor and the resetting of the footings. Mr. Wiley considered he had improved the situation with respect to his lot. Lot 314, 9014 Holly, between the Bernhardt and Swyden lots was purchased from defendant for $15,880 and sold by the purchasers in February, 1957, for approximately $16,800.

Glenn Gray, a consulting engineer and plaintiffs' witness, testified that his firm prepared the drainage plan for the area involved, and that the plan was in accordance with sound engineering practices.

Alfred Benberg, an architect and engineer and plaintiffs' witness, testified, without detailing his testimony, that he had investigated the drainage facilities involved and considered them inadequate for the "normal annual average maximum rainfalls" in Kansas City.

Joseph W. Spoor was defendant's witness. He had been in the appraisal business fifteen years, and had appraised for the Federal Housing Administration and the Veterans' Administration, making inspections, inspection reports and final certificates of compliance with Veterans' Administration minimum property requirements on properties, including the properties here involved. He testified that the street and sewer improvements must be accepted by a public authority, in this instance the county, to secure the Veterans' Administration's certificates of reasonable value of property; that the overall picture of a subdivision, including the drainage, is first studied and approved or disapproved, and after approval by the Veterans' Administration, it is submitted to a panel of appraisers who study the plan and might reject or make additional requirements for a given lot, and that inspections and inspection reports on a given lot to the Veterans' Administration are not made until after the overall plan has been approved. Defendant established that the streets or roads and sewers had been accepted and taken over to be maintained by the county authorities.

Three or four inspections and inspection reports were made to the Veterans' Administration during the construction of each house. The final compliance inspection report on each of the lots involved stated: "Street and sewer acceptance rec'd" "Engineers statement rec'd"; and carried a certificate by the compliance inspector that there was no evidence of noncompliance with Veterans' Administration minimum property requirements and, by the Chief Appraiser: "All improvements acceptably completed."

In each instance there was a warranty deed conveying the lot involved to the proper plaintiffs and a deed of trust to Mis-

souri Valley Investment Company for the balance of the purchase price. There is no question with respect to each lot that a loan guaranty certificate was issued in due course by the Veterans' Administration; and a GI loan was made on each of the properties by the Missouri Valley Investment Company and purchased by the Prudential Insurance Company after making several independent inspections and an appraisal of each of the properties; and that each of said GI loans remained in force and effect at the time of trial.

The parties accept the following (citations omitted) from Powers v. Shore, Mo., 248 S.W.2d 1, 5 [2–4], as determinative of whether plaintiffs made a submissible case of fraud and deceit.

" 'Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury.' * * * The establishment of each of these essential elements is necessary to a recovery. * * * 'Fraud is never presumed, but must be proven. Yet it is not necessary that it be shown by direct evidence. It may be established by facts and circumstances, and the burden of proof rests upon him who asserts it to make it manifest.' * * * The difficulty of proving fraud does not dispense with the necessity of making the proof. * * * 'And where the transaction under consideration may as well consist with honesty and fair dealing, as with a fraudulent purpose, it is to be referred to the better motive.' * * *." See also headnotes 5 and 6.

Defendant's salesman Kent McElhaney conducted the negotiations for the defend-

ant in the sale of the respective lots to the plaintiffs.

Mr. Allen's testimony is typical of the testimony of the plaintiffs. The Allens looked at a model house which they understood was according to specifications for Plan 5–E, and met the requirements of the Veterans' Administration, but saw no specifications for the house. Mr. Allen testified:

"Q. Were those specifications described to you in any way? A. No, they were not.

"Q. Do you know whether the house, as erected, met the Veterans' Administration specifications? A. No, I do not, except I relied upon the Veterans' Administration for their protection in this matter.

"Q. Did you assume that it did meet the specifications? A. I assumed that it did.

"Q. Did you ever see any technical bulletins of any kind? A. No, sir, I did not.

"Q. Were any technical bulletins ever mentioned to you by number? A. There were not.

"Q. Was the expression 'Minimum Property Requirements' mentioned to you by anybody in selling this property? A. No, sir, not at that time, they were not."

Mrs. Allen testified: "Q. Was there any discussion between you and Mr. Allen on the one hand and Mr. McElhaney on the other as to any technical bulletins of the Veterans' Administration or of the FHA? A. No." Mrs. Wiley was not a party to the negotiations leading up to Mr. Wiley's purchase. The testimony of all the other plaintiffs was to the effect that they were told the property would qualify for a GI loan, and that no technical bulletins of the Veterans' Administration or the Federal Housing Administration, or minimum property requirements, were mentioned or discussed.

Mr. McElhaney testified he told the several plaintiffs that the plans of the houses were approved by the Veterans' Administration and would be inspected by the Veterans' Administration as they were constructed; that he had no occasion to know of any technical publications and thought he had no conversations with plaintiffs concerning any technical bulletins of the Veterans' Administration or of the Federal Housing Administration, and minimum property requirements were not mentioned.

The testimony of plaintiffs was that defendant's salesman told them severally that the property would qualify for a GI loan guaranty by the Veterans' Administration. Each contract of sale and purchase was explicitly made contingent upon the obtaining of such a loan commitment, the seller being obligated to promptly refund the amount paid by the purchaser if such loan approval be not obtained. All the evidence on this issue was that each veteran secured a loan for the balance due, secured a guaranty from the Veterans' Administration of the loan; that the loan was outstanding; that payments were being made thereon; and that the guaranty was in full force and effect. The affirmative testimony is that no technical bulletins or minimum property requirements of the Veterans' Administration or the Federal Housing Administration were ever mentioned to any plaintiff. There is no showing of an intent on defendant's part that any purchaser act upon any such representation. No plaintiff ever heard any representation on defendant's behalf that did not materialize. It follows that there were no false representations with respect to said technical bulletins or property regulations. It is elementary for a recovery on the ground of fraudulent representations that the hearer must have relied and acted upon them. It is not to be supposed that a party has a right to act in reliance upon and is to be influenced or defrauded by a representation not made. We do not read this record to establish that defendant committed a fraud upon the Veterans' Administration. We

conclude there was no substantial evidence to sustain a recovery on the submitted grounds in plaintiffs' verdict directing instruction, and the claims of the plaintiffs based on fraud and deceit must fail.

Defendant also makes the point that the alleged misrepresentations were not actionable because, defendant says, if made, they were as to matters and things to occur in the future under the undisputed evidence. We need not develop this issue.

■ Plaintiffs asked no instruction on the negligence count (Count II) of their petition; but make the contention the case should be remanded for trial on the theory defendant was actionably negligent, citing Dorman v. East St. Louis R. Co., 335 Mo. 1082, 75 S.W.2d 854, 859 [1, 2], an observation from State ex rel. Terminal R. Ass'n of St. Louis v. Hostetter, 342 Mo. 859, 119 S.W.2d 208, 210, 211, and 1 Raymond, Missouri Instructions, § 1, pp. 1, 2. Plaintiffs omit from their quotation of Raymond, supra, the statement: "The decision in the Dorman case, supra, however, did not change the rule that the duty rests on counsel and not on the court to prepare the instructions for the jury." See the Dorman case, 75 S.W.2d loc. cit. 855, 858, 859; Schipper v. Brashear Truck Co., Mo., 132 S.W.2d 993, 996 [8, 10], 125 A.L.R. 674. Plaintiffs' authorities do not rule the issue presented. The instant verdicts were for the defendant. The issue falls within the holding in Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 93 [1, 5] (citing authority): "Appellant contends, first, that since respondent's instruction submitted only two issues, all other charges of negligence in the petition were abandoned. That is the law." See also Stone v. Farmington Aviation Corp., 363 Mo. 803, 253 S.W.2d 810, 813, 814 [10], where plaintiff's claim was based on negligence, breach of an implied and breach of an express warranty, and submitted on the latter; Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, 667 [3, 4]; Brooks v. Stewart, Mo., 335 S.W.2d 104. In addition, plaintiffs' motion for new trial makes no men-

tion of said issue. See Supreme Court Rule 79.03 (formerly 3.23), V.A.M.R.; Byrd v. McGinnis, Mo., 299 S.W.2d 455, 458 [3].

The trial court erred in granting plaintiffs a new trial. Accordingly, the order granting plaintiffs a new trial is reversed and the cause is remanded with directions to enter a judgment in favor of the defendant and against all the plaintiffs.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

LEEDY, P. J., EAGER and STORCKMAN, JJ., and ELMO B. HUNTER, Special Judge, concur.